RECEIVED AND FILED

2006 NOV -7 PM 12:51

U.S. BANKRUPTCY COURT
PATRICIA GRAY, CLERK

Entered on Docket
January 24, 2007

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: AMERICAN WAGERING, INC., a Nevada corporation; In re: LEROY'S HORSE & SPORTS PLACE, a Nevada corporation,

*Debtors,*

MICHAEL RACUSIN, d/b/a M. Racusin & Company,

*Appellant,*

v.

AMERICAN WAGERING, INC.; LEROY'S HORSE & SPORTS PLACE,

*Appellees.*

No. 05-15969

Bankruptcy
Appellate Panel
Case No.
NV-04-1029-BuBS

OPINION

APPEAL #04-2
ADV. 03-5084
ADV. 05-5037

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Smith, Brandt, and Bufford, Bankruptcy Judges, Presiding

Argued and Submitted
July 24, 2006—San Francisco, California

Filed October 6, 2006

Before: Procter Hug, Gilbert S. Merritt,* and
Richard A. Paez, Circuit Judges.

Opinion by Judge Merritt

*The Honorable Gilbert S. Merritt, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

17461

### COUNSEL

David N. Frederick, Dennis L. Kennedy, Sarah E. Harmon, Jennifer A. Smith, Lionel Sawyer & Collins, Las Vegas, Nevada, for the defendant-appellant.

Gerald M. Gordon, Thomas H. Fell, Ambrish S. Sidhu, Gordo & Silver, Las Vegas, Nevada, for the plaintiffs-appellees.

### OPINION

MERRITT, Senior Circuit Judge:

This is an appeal from a decision of the Bankruptcy Appellate Panel for the Ninth Circuit in favor of debtors, American Wagering, Inc. and Leroy's Horse and Sports Place. The only issue on appeal is whether the claim against the bankrupt corporation by Michael Racusin, a former business consultant to debtors, should be regarded as the debt of a creditor, or as a suit by a shareholder subject to subordination pursuant to 11 U.S.C. § 510(b). The bankruptcy court found that the claim was a debt not subject to subordination, but the Bankruptcy Appellate Panel reversed, characterizing Racusin as an investor. *In re American Wagering, Inc.*, 326 B.R. 449 (9th Cir. BAP 2005). We agree with the bankruptcy court that Racusin, as the holder of a money judgment, should be regarded as a creditor and reverse the decision of the Bankruptcy Appellate Panel and remand for further proceedings.

### I.

#### *Facts and Procedural History*

The litigation leading to this bankruptcy proceeding has a lengthy and convoluted history. In 1994, debtor Leroy's Horse and Sports Place hired Michael Racusin as a financial

advisor in connection with the initial public offering of Leroy's stock. In preparation for the initial public offering, Leroy's formed American Wagering, Inc. and became a subsidiary of American Wagering, Inc., which would become the publicly-owned entity after the initial public offering. On April 20, 1994, Racusin, doing business as M. Racusin and Company, and Leroy's entered into an agreement that stated:

> Should M. Racusin & Company bring in a buyer for Leroy's Horse and Sports Place, said company will be paid a commission based on 5% of the purchase price. All terms and conditions must be acceptable to Vic Salerno and commission would be paid by Leroy's Horse and Sports Place at closing.

A subsequent agreement was entered into on November 11, 1994, by the same parties that provided as follows:

> Michael Racusin has been our financial advisor for the purpose of an initial public offering by Rodman and Renshaw, Inc., Equity Securities Trading Co., Inc., or Orida Capital International, Ltd. As compensation he would be paid 4% of the final evaluation in the form of Leroy's common stock and $150,000 cash upon completion of common offering or IPO.

Excerpts of Record on Appeal at 2.

Two years later, in 1996, while the initial public offering was pending, Leroy's brought suit against Racusin seeking a determination that the contract was unenforceable. Racusin removed the case to federal court based on diversity and counterclaimed for breach of contract and other state-law claims. In September 1997, after a bench trial, the district court granted judgment to Racusin for $732,972. Racusin appealed on the ground he was entitled to a jury trial. This Court reversed and remanded, holding that Racusin was entitled to a jury trial. *Leroy's Horse and Sports Place v. Racusin*,

| 17466 | IN RE AMERICAN WAGERING, INC. |
|---|---|

No. 97-17283, 1999 WL 147118 (9th Cir. Mar. 16, 1999). On remand, the jury found in favor of Racusin, finding that the amount of compensation should be "stock in Leroy's . . . in an amount equal to 4.5% of $45,000,000 [the final valuation of the common stock] and $150,000 in cash." Based on this finding, the district court awarded Racusin 337,500 shares of stock worth $2.025 million [4.5% of $45,000,000] at $6 per share.

Racusin again appealed, contending it was error for the district court to award specific performance when he requested only money damages. This Court agreed and remanded the case to the district court to calculate the monetary value of the 337,500 shares. *Leroy's Horse and Sports Place v. Racusin*, Nos. 99-16909, 00-16642, 00-17001, 2001 WL 1345974 (9th Cir. Nov. 1, 2001). The calculation was to be based on when Racusin could have legally begun selling his shares, as well as how many shares he likely would have been able to sell at what times. *Id.* at 4. On remand, Racusin was awarded damages of $2,310,000; the sum of $150,000 cash plus $2,160,000, the value of the stock in 1996 when Racusin could have first legally sold shares.[1] *Leroy's Horse and Sports Place*, No. CV-S-95-00927 (D. Nev. July 8, 2003).

A few days after the district court decision awarding Racusin monetary damages, and six years after Racusin first reduced his claim to a money judgment in federal court, Leroy's and American Wagering each filed for Chapter 11 bankruptcy protection and the cases were consolidated for administrative purposes. Racusin filed a claim for $2,275,012, an amount based on the district court judgment with a set-off for the $150,000 cash that had already been paid, plus the

---

[1] Racusin again appealed, claiming he was entitled to prejudgment interest. We again remanded the matter to the district court for a determination on the appropriate amount of prejudgment interest. *Hartunian v. Racusin*, Nos. 03-16245, 03-16434, 03-16248, 03-16378, 2005 WL 79089 (9th Cir. Jan. 14, 2005).

amount of prejudgment interest sought in the then-pending appeal. The debtors brought an adversary proceeding against Racusin, alleging that his claim is one that must be subordinated under 11 U.S.C. § 510(b), which mandates subordination of "a claim . . . for damages arising from the purchase or sale of . . . a security." In an oral ruling, the bankruptcy court granted summary judgment to Racusin and denied the cross motion of Leroy's and American Wagering. *In re American Wagering, Inc.*, No. BK-N-03-52529, Transcript of Hearing on Cross-Motions for Summary Judgment at pp. 71-77 (Bankr. Nev. Jan. 5, 2004). On appeal, the Bankruptcy Appellate Panel reversed and held that the claim should be subordinated. *American Wagering, Inc. v. Racusin*, 326 B.R. 449 (9th Cir. BAP 2005). This appeal followed.

## II.

### *Jurisdiction and Standard of Review*

This Court conducts *de novo* review of a Bankruptcy Appellate Panel decision, *In re Burnett*, 435 F.3d 971, 975 (9th Cir. 2006), and independently reviews a bankruptcy court's ruling on appeal from the Bankruptcy Appellate Panel. *In re DeVille*, 361 F.3d 539, 547 (9th Cir. 2004). An appellate court reviews the bankruptcy court's findings of fact for clear error and the grant or denial of summary judgment by a bankruptcy court is reviewed *de novo*. *In re Nys*, 446 F.3d 938, 943 (9th Cir. 2006); *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003); *In re Prestige Ltd. P'ship-Concord*, 234 F.3d 1108, 1112-14 (9th Cir. 2000). This court has jurisdiction pursuant to 28 U.S.C. § 158(d)(1).

## III.

### *Discussion*

In claiming error by the Bankruptcy Appellate Panel, Racusin makes two main arguments: (1) his claim in the bank-

ruptcy proceeding is not an equity claim but a debt claim that cannot be subordinated because he received a money judgment prior to the commencement of the bankruptcy proceeding and (2) in any event, his claim is not one "for damages arising from the purchase or sale of a security" subject to subordination under section 510(b). We agree that his claim is not one that is properly subordinated because it is not one "for damages arising from the purchase or sale of a security." The stock was never tendered to Racusin, resulting in a lawsuit for breach of contract seeking damages based on the value of the stock. Racusin received a money judgment for the breach and initiated legal action to receive that award long before the bankruptcy proceeding at issue here commenced. Accordingly, his claim in the bankruptcy proceeding is more akin to that of a creditor than an investor and subordinating his claim as "arising from the purchase or sale" of stock would not serve the underlying purposes of subordination under section 510(b).

### A.   *The Statute — Plain Language, Purpose and Policies*

Section 510(b) reads as follows:

§ 510. Subordination

. . .

(b) For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

IN RE AMERICAN WAGERING, INC. 17469

11 U.S.C. § 510(b).

[1] Section 510(b) serves to effectuate one of the general principles of corporate and bankruptcy law: that creditors are entitled to be paid ahead of shareholders in the distribution of corporate assets. The principles behind corporate and bankruptcy laws generally do not favor shifting the risk of loss from shareholders to creditors, even if the shareholders are blameless. One of the primary purposes of section 510(b), therefore, is to prevent disappointed shareholders, sometimes the victims of corporate fraud, from recouping their investment in parity with unsecured creditors.

[2] Although many subordination cases sound in fraud, the scope of section 510(b) has been broadened over the years to include claims based on contract law and other actions. The majority of courts in recent years that have confronted the scope of § 510(b), including this one, have concluded that the phrase "arising from" should be read broadly to encompass claims other than fraud claims, such as claims for breach of contract. *See, e.g., In re Telegroup*, 281 F.3d 133, 144 (3d Cir. 2002) (breach of stock purchase agreement); *In re Betacom of Phoenix, Inc.*, 240 F.3d 823, 829 (9th Cir. 2001) (breach of merger agreement); *In re Int'l Wireless Communications Holdings, Inc.*, 257 B.R. 739, 746 (Bankr. D. Del. 2001), *aff'd*, 279 B.R. 463 (D. Del. 2002), *aff'd*, 2003 WL 21466898 (3d Cir. 2003) (breach of stock purchase agreement); *In re PT-1 Communications, Inc.*, 304 B.R. 601, 608 (Bankr. E.D.N.Y. 2004) (tortious interference). That the claim is for breach of contract is not sufficient alone to prevent subordination. As noted above, a number of courts, including this one, have held that breach of contract claims may be subordinated under section 510(b) where there exists "some nexus or causal relationship between the claim and the purchase of the securities . . . ." *Telegroup*, 281 F.3d at 138; *Betacom*, 240 F.3d at 829; *Int'l Wireless*, 257 B.R. at 746; *In re NAL Fin. Group, Inc.*, 237 B.R. 225, 234 (Bankr. S. D. Fla. 1999). These opinions make clear that they were concerned with claims that

tried to recharacterize or restate what would otherwise be subordinated securities claims.

As a remedial statute, section 510(b) should be interpreted broadly in order to effectuate the intent of Congress. This principle was recognized in our earlier opinion, *American Broadcasting Sys., Inc. v. Nugent (In re Betacom of Phoenix, Inc.)*, 240 F.3d 823 (9th Cir. 2001), which examined the scope of section 510(b) and is the governing precedent on section 510(b) in the Circuit. In *Betacom*, the claimants held shares in a corporation that entered into a merger agreement with the debtor. The agreement called for the claimants to receive stock of the surviving company in exchange for their shares in the acquired company. The merger agreement never closed and claimants never accepted their tendered shares, which remained in escrow. We held that the claim should be subordinated under section 510(b).

[3] *Betacom* identifies two main reasons for subordination of a claim pursuant to section 510(b): (1) dissimilar risk and return expectations of creditors and shareholders and (2) the reliance of creditors on the equity cushion provided by shareholder investment. *Betacom* focused on the fact that investors expect to take more risks than creditors when they deal with a corporate entity, but we also made clear that a claim should only be subordinated when it will accomplish the purposes of section 510(b). Neither rationale applies here. Racusin's claim became a money judgment six years before the bankruptcy. He never became a shareholder nor did he provide any equity that would be relied on by creditors in their dealings with debtors. Shares were tendered to the claimants in *Betacom* but the claimants refused them. Here, Racusin never was offered the shares due him under the agreement. His potential opportunity for profit as a shareholder was eliminated long before the bankruptcy and incidents of an equity interest in the corporation were eliminated. The lengthy time period between Racusin's first favorable judicial ruling and the filing of the bankruptcy petition distinguish this case from others with

IN RE AMERICAN WAGERING, INC.                17471

much shorter time frames between the claimant's obtaining a judgment and the filing of the bankruptcy by the debtor. *See, e.g., In re Betacom*, 240 F.3d at 826 (lawsuit filed three years before bankruptcy petition, but suit not concluded and no judgment issued at time of bankruptcy filing); *In re Alta+Cast*, 301 B.R. 150, 152 (Bankr. D. Del. 2003) (same).

[4] A look at the plain language of the statute demonstrates its inapplicability to the circumstances here. Under the plain language of the statute a claim must be subordinated if it is one for damages arising from "rescission of a purchase or sale of a security of the debtor." Racusin's claim arises from the fact that the value of the stock on the date of the public offering was simply the basis for calculating his compensation. He has never been a shareholder, has never attempted to recover an investment loss and since 1996 he has only sought to collect compensation owed for services he performed pursuant to a contract that the debtors breached.

In *In re Alta+Cast*, 301 B.R. 150 (Bankr. D. Del. 2003), a case relied on by the Bankruptcy Appellate Panel, the debtor sought to subordinate a former employee's claim. There, the debtor and claimant had an agreement by which the debtor agreed to repurchase its stock from the claimant if he was terminated for cause. When the debtor did not repurchase the securities after terminating claimant for cause, the claimant obtained a judgment against the debtor. The bankruptcy court held that the judgment arose from an agreement for the sale or purchase of a security because the claimant retained the risk of ownership by holding the stock until his termination — the claimant actually obtained an equity interest and the lawsuit arose from the debtor's refusal to *repurchase* the equity interest. *Id.* at 155. Here, Racusin never obtained an equity interest in debtors, and his lawsuit arose from the refusal to *issue* stock as compensation for services rendered.

[5] Racusin received a money judgment for services rendered nine years before the bankruptcy; he did not seek to

| 17472 | IN RE AMERICAN WAGERING, INC. |

enforce an award of an equity interest in debtors' companies. Racusin therefore contends that because the claim is based on a pre-petition money judgment it simply is not subject to subordination under section 510(b). In *In re Montgomery Ward Holding Corp.*, 272 B.R. 836, 842 (Bankr. D. Del. 2001), the court held that a claim based on a promissory note is not subject to subordination under section 510(b) because such claims are only for the recovery of an unpaid debt. *Id.* at 842-43; *accord In re Mobile Tool Int'l, Inc.*, 306 B.R. 778 (Bankr. D. Del. 2004). Although Racusin did not exchange his stock for a debt instrument, like the notes in *Montgomery Ward*, he sought to receive money damages for failure to deliver the stock well in advance of the debtors' filing for bankruptcy. He filed his lawsuit well before the onset of the bankruptcy filing, rebutting any charge that he was trying to convert an equity interest into an unsecured claim only when the debtors' stock started to decline in value — one of the claimed purposes behind section 510(b). Our earlier decision reversing a stock award to Racusin makes clear that his underlying claim is a debt claim, not an equity claim, for purposes of the bankruptcy proceeding.

[6] Racusin did not sue debtors as an equity investor seeking monetary damages for fraud or breach of contract related to their mishandling of shareholders' economic investment in the company. He sued as an agent who did not receive compensation promised in an employment agreement. The money judgment awarded at the direction of our Court in its earlier opinion established a fixed, pre-petition debt due and owing Racusin as a creditor, not the risk/return position of an equity investor in the now-bankrupt corporation.

For the foregoing reasons, we reverse the judgment of the Bankruptcy Appellate Panel and remand for further proceedings.

Reversed and Remanded.